[No. S114551. Mar. 8, 2004.]

In re RAYMOND EDWARD STEELE on Habeas Corpus.

## COUNSEL

Gregory Marshall, under appointment by the Supreme Court, for Petitioner Raymond Edward Steele.

Michael Laurence, Jeannie R. Sternberg and Cristina Bordé for Habeas Corpus Resource Center as Amicus Curiae on behalf of Petitioner Raymond Edward Steele.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Ward A. Campbell and Eric L. Christoffersen, Deputy Attorneys General, for Respondent the People.

## OPINION

**CHIN, J.**—Petitioner Raymond Edward Steele is under a judgment of death. He has filed in this court a motion for postconviction discovery pursuant to recently enacted Penal Code section 1054.9 (section 1054.9). We issued an order to show cause to resolve important procedural and substantive issues regarding that section.

Procedurally, we conclude that those who seek discovery under section 1054.9 because they are preparing to file or have filed a petition for writ of habeas corpus challenging a judgment of death or life without the possibility of parole should generally first make the discovery motion in the trial court that rendered the judgment. After the trial court has ruled, either party may challenge that ruling by a petition for writ of mandate in the Court of Appeal.

Substantively, we conclude that section 1054.9's discovery includes, and is limited to, specific materials the prosecution or law enforcement authorities involved in the case currently possess that the defendant can show fall into any of these categories: (1) materials the prosecutor provided at time of trial but have since become lost to the defendant, (2) materials the prosecution should have provided at time of trial, or (3) materials the defendant would have been entitled to at time of trial had the defendant specifically requested them.

In this case, the prosecution had no obligation at time of trial to provide the discovery materials petitioner seeks—evidence regarding his own behavior in prison that was relevant neither to the charged crime nor to any of the

prosecution evidence in aggravation at the penalty phase—absent a specific defense request. However, if the defense had specifically requested the materials at time of trial (the record is unclear), the prosecution would have been obligated to provide them if it possessed them. Accordingly, we conclude that petitioner is entitled to discovery of materials within the scope of the current request that petitioner does not now possess but that the prosecution and law enforcement authorities involved in the case currently possess, if any exist.

## I. PROCEDURAL BACKGROUND

Petitioner was convicted of first degree murder with the special circumstance of a prior murder conviction and sentenced to death in the Shasta County Superior Court. We affirmed the judgment. (*People v. Steele* (2002) 27 Cal.4th 1230 [120 Cal.Rptr.2d 432, 47 P.3d 225].) Details of the underlying crime are not here pertinent. It suffices to say that petitioner murdered a young woman in 1988 and had previously been convicted of the 1971 murder of another young woman. In aggravation, the prosecution presented evidence of other crimes petitioner committed before he was arrested for the first murder. Petitioner presented a mental defense at the guilt phase and additional mitigating evidence at the penalty phase, including evidence that he had provided to prison authorities valuable information about the Nuestra Familia, a prison gang, while in prison for the first murder.

Petitioner filed the underlying petition for writ of habeas corpus in this court challenging the judgment. He also filed in this court a motion for postconviction discovery under section 1054.9. He asks us to order the "prosecution to provide . . . [a]ny and all reports, memoranda, notes, tape recordings, statements, transcripts, confidential files, debriefing documents, and/or summaries documenting or referring to petitioner's leaving the Nuestra Familia; to information provided by petitioner regarding the Nuestra Familia, its members and associates, and non-member collaborators; and to assistance provided by petitioner in prosecutions pursued by the State of California and/or local prosecutors against the Nuestra Familia and others accused of collaborating with the Nuestra Familia in the commission of crimes." He alleges that his current counsel "has conducted a good faith review of trial counsel's files and interviewed trial counsel and has ascertained that the materials sought here were not provided to trial counsel"; and that, accordingly, "despite his good faith efforts, habeas counsel . . . has been unable to obtain the requested materials from trial counsel . . . ." He has also provided a declaration from current counsel supporting these allegations. He argues that although he presented some evidence in mitigation at trial regarding his prison behavior, more such evidence existed, and the prosecution was and remains obligated to provide it to him.

The Attorney General's opposition to the motion and petitioner's reply to that opposition showed substantial disagreement regarding the scope of discovery the statute provides. In order to resolve the question, we ordered the Director of Corrections to show cause why the discovery motion should not be granted. In addition to other relevant matters the parties chose to brief, we directed them to brief the questions of which court should first hear the discovery motion and "what is the scope of the prosecution's duty, if any, to provide discovery of materials unrelated to the charged crimes or prosecution evidence in aggravation but that might provide penalty phase mitigating evidence." The Attorney General, representing the Director of Corrections, has filed a return to the order to show cause and petitioner a traverse. At our invitation, the California Habeas Corpus Resource Center (HCRC) has filed an amicus curiae brief addressing these issues.

## II. DISCUSSION

In *People v. Gonzalez* (1990) 51 Cal.3d 1179 [275 Cal.Rptr. 729, 800 P.2d 1159], we held that a person seeking habeas corpus relief from a judgment of death is not entitled to court-ordered discovery unless and until this court has issued an order to show cause and thus has determined that the petition has stated a prima facie case for relief. (*Id.* at pp. 1255–1261.)

Effective January 1, 2003, the Legislature added section 1054.9 to the Penal Code. (Stats. 2002, ch. 1105, § 1, enacting Sen. Bill No. 1391 (2001–2002 Reg. Sess.) (Senate Bill 1391).) Subdivisions (a) and (b) of that section are relevant here. Subdivision (a) provides: "Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c) [which relates to physical evidence], order that the defendant be provided reasonable access to any of the materials described in subdivision (b)." Subdivision (b) provides: "For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial."

In his discovery motion, petitioner specifically alleged that his current attorney had made a good faith, but unsuccessful, effort to obtain the discovery materials from trial counsel and supplied a detailed declaration from his current attorney supporting the allegation. The Attorney General does not dispute this allegation. Thus, the "good faith effort" requirement is not at issue here. But other issues exist. Section 1054.9 says little about the procedure a defendant should follow in seeking the discovery materials, such

as the time and place for making the motion. The parties also dispute the scope of permitted discovery and whether it extends to what petitioner seeks in this case. We will consider first the procedural questions, then the substantive questions.

### A. *Procedural Questions*

 Petitioner initially filed this motion in this court. Section 1054.9 does not specifically state which court should hear the motion first. It just says that the "court" shall order the appropriate discovery without designating either appellate or trial court. Petitioner argues in his traverse, "Because of the nature of the material sought in petitioner's discovery motion, this court is a more appropriate forum than the trial court for the motion in this case." The Attorney General contends, "A section 1054.9 request should be addressed to the court where the prisoner has filed the related state habeas petition or motion to vacate judgment," which in this instance is this court. Thus, both parties argue that the motion was properly filed first in this court, although for different reasons. The HCRC maintains that, because section 1054.9 merely says "court," the motion may be filed in any court. We agree with the HCRC that either the trial or the reviewing court has jurisdiction over the motion. But, as we explain, we believe that when, as here, no execution is imminent, the discovery motion should first be filed in the trial court that rendered the underlying judgment.

 The Attorney General's argument assumes a habeas corpus petition (or, in other cases, a motion to vacate a judgment) will be pending in a state court when the motion is filed. The assumption is unfounded. The statute permits the motion "[u]pon the prosecution of a postconviction writ of habeas corpus . . . ." (§ 1054.9, subd. (a).) In context, we believe the Legislature used the word "prosecution" flexibly to include cases in which the movant is *preparing* the petition as well as cases in which the movant has already filed it. In *People v. Gonzalez, supra*, 51 Cal.3d at pages 1257 and 1261, we said that after the judgment had become final, nothing was pending in the trial court to which a discovery motion may attach, and that the defendant had to state a prima facie case for relief before he may receive discovery. Section 1054.9 modifies this rule. Defendants are now entitled to discovery to assist in stating a prima facie case for relief. But the only way this modification of the *Gonzalez* rule makes sense is to permit defendants to seek discovery *before* they file the petition, i.e., before they must state a prima facie case. Reasonably construed, the statute permits discovery as an aid in preparing the petition, which means discovery may come before the petition is filed. Thus, we believe a defendant is entitled to seek discovery if he or she is preparing to file the petition as well as after the petition has been filed.

The nature of the discovery the statute permits makes the trial court generally the appropriate place to first file the motion. As discussed below, the statute covers specific discovery that the prosecutor did provide but has become lost to petitioner, that the prosecution should have provided but failed to do so, and to that to which the defense would have been entitled had it requested it. The trial court that rendered the judgment is far better positioned than an appellate court to make these determinations and then decide what specific new discovery, if any, it should order. Moreover, we agree with the HCRC that "section 1054.9 should be interpreted to promote informal, timely discovery between parties prior to seeking court enforcement." Beginning the process at the trial level encourages the settlement of disputes at that level and maximizes the possibility that any discovery issues can be resolved with a minimum of court involvement.

█ It thus makes sense for discovery motions under section 1054.9 generally to be filed first in the trial court that rendered the judgment, even though both trial and reviewing courts have jurisdiction over the motion. Similarly, both trial and appellate courts have jurisdiction over habeas corpus petitions, but a reviewing court has discretion to deny without prejudice a habeas corpus petition that was not filed first in a proper lower court. (*In re Ramirez* (2001) 89 Cal.App.4th 1312, 1314, 1320 [108 Cal.Rptr.2d 229]; see *People v. Superior Court* (*Jimenez*) (2002) 28 Cal.4th 798, 806, fn. 3 [123 Cal.Rptr.2d 31, 50 P.3d 743].) █ Thus, we conclude that when no execution is imminent, a person seeking specific discovery under section 1054.9 should first file the motion in the trial court that rendered the judgment.[1] A reviewing court can, and generally should, deny without prejudice a discovery motion that was not first filed in the trial court. We are confident that most discovery matters can be resolved expeditiously in the trial court (or informally between the parties). But if necessary, after the trial court has ruled, either party may challenge that ruling by a petition for writ of mandate in the Court of Appeal.[2]

---

[1] The considerations are different when the federal courts have denied relief on habeas corpus (or the time for the petitioner to seek federal habeas corpus relief has passed), and the superior court has set a specific execution date. At this late stage of the proceedings, to expedite our consideration of any final challenges to the judgment, a petitioner may, and usually should, file any discovery motion in this court in the first instance.

[2] Section 1054.9 provides no time limits for making the discovery motion or complying with any discovery order. We believe the statute implies that the motion, any petition challenging the trial court's ruling, and compliance with a discovery order must all be done within a reasonable time period. We will consider any unreasonable delay in seeking discovery under this section in determining whether the underlying habeas corpus petition is timely. (See generally *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311]; *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729].) We would consider a petition for writ of mandate challenging the trial court's order filed within 20 days after that order to be filed within a reasonable time for these purposes. Moreover, as we are directing in this case,

Because petitioner filed this motion in this court first, we could simply deny it without prejudice to filing it in the Shasta County Superior Court. However, to provide guidance to that court and future courts confronting similar discovery motions, we believe it appropriate to consider the merits of this motion at this time. Accordingly, we turn to the substantive questions.

B. *Substantive Questions*

1. *The Scope of Section 1054.9*

Section 1054.9 provides that if the defendant shows that good faith efforts to obtain the materials from trial counsel failed, the court should order the defendant be given access to "discovery materials," defined as "materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." (§ 1054.9, subd. (b).) The Attorney General argues that this statute is only a "file reconstruction statute," and the discovery it permits is limited to replacing materials that the defense once possessed but has since lost. We disagree. Although permitting defendants to reobtain items they once possessed but have lost is one purpose, perhaps even the main purpose, of the statute, the statutory language is not so limited.

■ "The plain language of the statute establishes what was intended by the Legislature." (*People v. Statum* (2002) 28 Cal.4th 682, 690 [122 Cal.Rptr.2d 572, 50 P.3d 355].) Here, the statute defines the covered discovery as including materials to which the defendant "would have been entitled at time of trial." (§ 1054.9, subd. (b).) It does not limit the discovery to materials the defendant *actually possessed* to the exclusion of materials the defense *should have possessed*. If the Legislature had intended to limit the discovery to file reconstruction it could easily have said so.

■ The Attorney General points out that a trial attorney is obligated to turn over the litigation file to the client or new counsel once that attorney's representation has terminated. (*Rose v. State Bar* (1989) 49 Cal.3d 646, 655 [262 Cal.Rptr. 702, 779 P.2d 761].) Thus, he argues, the statutory requirement that the defendant make a good faith effort to obtain the materials from trial counsel "only makes sense when section 1054.9 is read as a means to reconstruct defendants' trial files when trial counsel have failed to fulfill their duties." Again, we disagree. The reason for the good faith effort requirement of section 1054.9, subdivision (a), is not difficult to discern—to

---

any discovery ordered pursuant to section 1054.9 should be provided within a reasonable time, which might vary depending on the nature of the order. We will also consider the date of compliance with the order in considering the timeliness of any petition for writ of habeas corpus that might be filed in light of the discovery.

prevent defendants from clogging the courts with requests to obtain materials they could simply get from trial counsel. The requirement does not modify the definition of discovery materials contained in subdivision (b) of that section.

The Attorney General also argues that, as we pointed out in *People v. Gonzalez, supra,* 51 Cal.3d at pages 1260 and 1261, prosecutors have a continuing duty to disclose information favorable to the defense, and we expect and assume that they will perform this duty promptly and fully, and, moreover, that "[i]t is presumed that official duty has been regularly performed." (Evid. Code, § 664.) Accordingly, he urges, any interpretation of section 1054.9 that extends to discovery the prosecution should have provided at time of trial makes it redundant of other law. However, the expectation and assumption we stated in *Gonzalez* merely mean that normally, and unless the defendant overcomes Evidence Code section 664's presumption as to specific evidence, there will be no discovery for the trial court to order that the prosecutor should have provided at trial. None of this changes the plain meaning of the statute's inclusion of materials to which the defendant "would have been entitled."

■ The Attorney General also cites legislative history materials in support of his narrow reading of section 1054.9. Although legislative history often can help interpret an ambiguous statute, it cannot change the plain meaning of clear language. (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 269 [121 Cal.Rptr.2d 203, 47 P.3d 1069]; *Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) ■ The plain language here does not limit the discovery materials to materials the defense once actually possessed to the exclusion of materials the defense did not possess but to which it would have been entitled at time of trial. Moreover, the legislative history does not strongly support a narrow interpretation. Various committee reports on the bill that became section 1054.9 discuss the problem that occurs when a defendant's files are lost or destroyed after trial; they note that the bill would provide a means to reconstruct destroyed or missing files. The reports do not mention other problems such as the possibility that prosecutors did not fulfill their duty to provide discovery. But this circumstance simply means that the bill's main focus was to permit reconstruction of lost files, not that the bill was *limited* to solving that problem. Indeed, one of the reports the Attorney General cites also states, "The purpose of the proposed legislation is to provide a reasonable avenue for habeas counsel to obtain documents to which trial counsel was already legally entitled." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill 1391, *supra,* as amended Aug. 26, 2002, p. 5.) Obtaining documents to which trial counsel was legally entitled is broader than mere file reconstruction.

Thus, the Attorney General's interpretation is too narrow. But section 1054.9 does provide only limited discovery. It does not allow "free-floating" discovery asking for virtually anything the prosecution possesses. (*People v. Gonzalez, supra,* 51 Cal.3d at p. 1256.) First, it includes only materials "in the possession of the prosecution and law enforcement authorities," which we take to mean in their possession *currently.* The statute imposes no preservation duties that do not otherwise exist. It also does not impose a duty to search for or obtain materials not currently possessed. The statute also covers only materials to which "defendant would have been entitled at time of trial" but does not currently possess. As the Attorney General notes, the limited nature of the discovery materials becomes clear on comparing the ultimate statute with an earlier version of the bill. As amended on April 10, 2002, Senate Bill 1391 defined the discovery materials as including materials "to which the defendant was entitled at time of trial, or to which the defendant would have been entitled *had the discovery materials been known* . . . ." (Italics added.) The italicized language was deleted before the bill became law. ▮ Thus, the statute is limited to materials to which the defendant would have been entitled *at the time of trial.* We must decide exactly what types of materials this includes.

As the Attorney General acknowledges, section 1054.9 clearly permits record reconstruction; thus, the defendant is entitled to materials the prosecution provided at trial but that the defendant can show have since been lost. We believe it also includes materials to which the defendant was *actually* entitled at the time of trial, but did not receive. This category includes specific materials that the defendant can show the prosecution should have provided (but did not provide) at the time of trial because they came within the scope of a discovery order the trial court actually issued at time of trial or a statutory duty to provide discovery. (See Pen. Code, § 1054 et seq.)[3] Additionally, "The prosecution has a duty under the Fourteenth Amendment's due process clause to disclose evidence to a criminal defendant" that is "both favorable to the defendant and material on either guilt or punishment." (*In re Sassounian* (1995) 9 Cal.4th 535, 543 [37 Cal.Rptr.2d 446, 887 P.2d 527]; see also *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*).) Finally, this category includes materials the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them.

But section 1054.9 is not limited to these materials. The statute includes not just materials to which the defendant was *actually* entitled, but "materials

---

[3] Penal Code section 1054 et seq. is a comprehensive statutory scheme governing discovery at trial. (See generally *Izazaga v. Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304].) It was enacted on June 5, 1990, during the penalty phase of the trial in this case, and hence did not govern pretrial discovery here.

in the possession of the prosecution and law enforcement authorities to which the same defendant *would have been entitled* at time of trial." (*Ibid.*, italics added.) Use of the conditional perfect tense—"would have been"—indicates the Legislature intended broader discovery than just materials to which the defendant *was* entitled. This gives rise to another category of materials we believe the statute covers: materials that the prosecution would have been obligated to provide had there been a specific defense request at trial, but was not actually obligated to provide because no such request was made. These are materials to which the defendant *would have been entitled* had he or she requested them. We conclude that the Legislature has required the prosecution and related law enforcement authorities to disclose specific materials currently in their possession that they would have been obligated to turn over at time of trial had there been a specific defense request.

█ The statute also presents the question of exactly who must possess the materials for them to come within its scope. Section 1054.9, subdivision (b), refers to "materials in the possession of the prosecution and law enforcement authorities . . . ." Thus, the materials include not only those the prosecution itself possesses but those that law enforcement authorities possess. The discovery obligation, however, does not extend to all law enforcement authorities everywhere in the world but, we believe, only to law enforcement authorities who were involved in the investigation or prosecution of the case. This conclusion becomes clear on reading the statue in context. Section 1054.9 is part of the general discovery provisions of Penal Code section 1054 et seq. Those provisions limit trial discovery to materials the prosecutor possesses or knows "to be in the possession of the *investigating* agencies . . . ." (Pen. Code, § 1054.1, italics added.) They also provide that the statutory provisions are the only means for the defendant to compel discovery "from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties." (Pen. Code, § 1054.5, subd. (a).) Section 1054.9 does not require that the prosecutor *know* the materials are in the possession of the investigating agencies, but we believe the reference to "law enforcement authorities" in section 1054.9, subdivision (b), must be read in light of these other provisions. *At trial*, these discovery obligations do not extend to materials possessed by law enforcement agencies that were not involved in investigating or preparing the case against the defendant. Section 1054.9, subdivision (b), should not be read as creating a broader *postconviction* discovery right.

This conclusion is consistent with the scope of the prosecution's constitutional duty to disclose exculpatory information. "The scope of this disclosure obligation extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge 'any favorable evidence

known to the others *acting on the government's behalf . . . .' "* (*In re Brown* (1998) 17 Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715], italics added, quoting *Kyles v. Whitley* (1995) 514 U.S. 419, 437 [131 L.Ed.2d 490, 115 S.Ct. 1555].) "As a concomitant of this duty, any favorable evidence known to the others acting on the government's behalf is imputed to the prosecution. 'The individual prosecutor is presumed to have knowledge of all information gathered *in connection with the government's investigation.*' " (*In re Brown, supra,* at p. 879, italics added, quoting *U.S. v. Payne* (2d Cir. 1995) 63 F.3d 1200, 1208.) Thus, the prosecution is responsible not only for evidence in its own files but also for information possessed by others acting on the government's behalf that were gathered in connection with the investigation. But the prosecution cannot reasonably be held responsible for evidence in the possession of *all* governmental agencies, including those not involved in the investigation or prosecution of the case. "Conversely, a prosecutor does not have a duty to disclose exculpatory evidence or information to a defendant unless the prosecution team actually or constructively possesses that evidence or information. Thus, information possessed by an agency that has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team, and the prosecutor does not have the duty to search for or to disclose such material." (*People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1315 [96 Cal.Rptr.2d 264].)

▉ Accordingly, we interpret section 1054.9 to require the trial court, on a proper showing of a good faith effort to obtain the materials from trial counsel, to order discovery of specific materials currently in the possession of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the defendant can show either (1) the prosecution did provide at time of trial but have since become lost to the defendant; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them.

### 2. *Application to This Case*

Petitioner argues that he was entitled at trial to the discovery he seeks because it was "*Brady* material." (*Brady, supra,* 373 U.S. 83.) As noted, *Brady* and other cases have made clear that the prosecution has a general duty to disclose evidence favorable to the defense. That this duty extends

generally to evidence favorable on punishment as well as guilt was made clear in *Brady* itself, which referred to evidence "material either to guilt or to punishment . . . ." (*Brady, supra,* at p. 87.) "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " (*Strickler v. Greene* (1999) 527 U.S. 263, 280 [144 L.Ed.2d 286, 119 S.Ct. 1936], quoting *United States v. Bagley* (1985) 473 U.S. 667, 682 [87 L.Ed.2d 481, 105 S.Ct. 3375].)

Petitioner argues that information regarding his behavior in prison was mitigating evidence, and thus the prosecution had a duty to disclose it at trial. We disagree that the prosecution had the duty to disclose such evidence at trial absent a specific defense request for that information.

 In a capital case, evidence favorable to the defendant bearing on punishment is of two kinds. First is evidence that mitigates the impact of the prosecution evidence, in other words, evidence that either reduces the defendant's culpability for the charged crimes or other crimes the prosecution proves at the penalty phase or weakens the strength of other aggravating evidence the prosecution presents. The prosecution's duty clearly extends to providing favorable evidence of this kind. If the prosecution proves a crime against the defendant or presents other aggravating evidence, it has a duty to disclose any evidence on these matters materially favorable to the defendant. *Brady, supra,* 373 U.S. 83, provides an example of this type of evidence relating to punishment. In *Brady,* Brady and a companion, Boblit, were convicted of first degree murder and sentenced to death. The prosecution had withheld from Brady evidence that Boblit had admitted actually committing the homicide. This evidence did not materially aid Brady regarding guilt, for both perpetrators could properly be convicted of first degree murder under state law without being the actual killer. (*Id.* at pp. 88, 90.) However, by suggesting that Boblit, and not Brady, was the actual killer, the admission was relevant to punishment, i.e., to whether Brady should have received the death penalty for the murder. (*Id.* at pp. 87–88; see *United States v. Agurs* (1976) 427 U.S. 97, 105–106 [49 L.Ed.2d 342, 96 S.Ct. 2392] [explaining this aspect of *Brady*].)

 But evidence favorable to the defendant in a capital case can extend beyond evidence relating to the prosecution evidence or theory of the case. It includes a second kind of evidence: *anything* regarding the defendant personally that he or she offers as mitigating. "The Eighth and Fourteenth Amendments require that the sentencer in a capital case not be precluded from considering any relevant mitigating evidence, that is, evidence regarding '*any aspect of a defendant's character or record* and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than

death.' " (*People v. Frye* (1998) 18 Cal.4th 894, 1015 [77 Cal.Rptr.2d 25, 959 P.2d 183], quoting *Lockett v. Ohio* (1978) 438 U.S. 586, 604 [57 L.Ed.2d 973, 98 S.Ct. 2954], italics added.) The second kind of evidence reflected in the italicized language permits the defendant to introduce "a broad range of evidence mitigating imposition of the death penalty." (*People v. Frye, supra,* at p. 1015.)

Petitioner has not cited, and we are unaware of, authority holding that the prosecution has a duty, absent a specific request, to disclose evidence of the second kind, that is, evidence relevant solely to a *defendant's* character or record.[4] The broad statement in *Brady, supra,* 373 U.S. at page 87, that the duty extends to evidence material to punishment must be read in context. *Brady* involved evidence relevant to the defendant's culpability for the crime and not just evidence regarding the defendant unrelated to the charged crime or any other prosecution evidence. Its purpose was to prevent the obvious unfairness of allowing the prosecution to withhold information that undermines its own case. Implicitly, *Brady* requires the prosecution to disclose only evidence that is favorable and material under the prosecution's evidence or theory of the case. Otherwise, the prosecution effectively would be required to do what *Brady* does *not* require, that is, to "deliver [its] entire file to defense counsel" (*United States v. Bagley, supra,* 473 U.S. at p. 675) in order to avoid withholding evidence that may, or may not, become favorable and material depending on whatever unknown and unknowable theory of the case that the defendant might choose to adopt.

The duty of disclosure exists to avoid "an unfair trial to the accused" (*Brady, supra,* 373 U.S. at p. 87) or "to ensure that a miscarriage of justice does not occur" (*United States v. Bagley, supra,* 473 U.S. at p. 675). Requiring the prosecution, on its own, to disclose information that might fit some defense theory but is irrelevant to the prosecution evidence or theory of the case is generally not necessary to ensure a fair trial. Because mitigation is often " ' "in the eye of the beholder" ' " (*Burger v. Kemp* (1987) 483 U.S. 776, 794 [97 L.Ed.2d 638, 107 S.Ct. 3114]), the defense will know far better than the prosecution what evidence fits its theory of the case and what

---

[4] The HCRC cites three cases it claims support the argument that the duty extends to evidence relating solely to the defendant. Two of the cases include language referring to evidence material to punishment similar to the language of *Brady, supra,* 373 U.S. at page 87, but they too involved evidence relevant to the charged crime or other prosecution evidence and not evidence relating only to the defendant personally. (*U.S. v. Frank* (S.D.N.Y. 1998) 11 F.Supp.2d 322, 326–328; *U.S. v. Beckford* (E.D.Va. 1997) 962 F.Supp. 804, 807–811.) The third case does include broad language that the duty extends to evidence relating to mitigating factors including the defendant's background or character. (*U.S. v. Storey* (D.Kan. 1997) 956 F.Supp. 934, 939–940.) But that case refers to no such specific evidence and, because the prosecution agreed to provide the defendant essentially everything it had, it does not discuss the point. The court simply denied the discovery request as moot in light of the prosecution's representations that it had provided all such evidence.

evidence does not. Because the defense can offer virtually anything about the defendant personally that it considers mitigating, virtually anything regarding the defendant can be exculpatory if the defense considers it so. Thus, evidence whose exculpatory nature is not obvious might become exculpatory whenever the defense so claims. But the duty to disclose evidence cannot extend to evidence the prosecution had no reason to believe the defense would consider exculpatory. Requiring the prosecution to, as the high court put it, "assist the defense in making its case" (*United States v. Bagley, supra,* at p. 675, fn. 6) is unnecessary when it comes to potential mitigating evidence regarding the defendant personally. It would also be overly burdensome. It is one thing to expect the prosecution to know about its own case and to provide the defense with evidence weakening that case. It is quite different to expect it to be alert to information unrelated to its case that might support a defense theory, especially given the unlimited range of potentially mitigating evidence.

 If the defendant specifically asked the prosecution to provide this information, the situation may be different. In some circumstances, the obligation to disclose evidence favorable to the defendant may require the prosecution to provide materials that the defendant specifically requests as potential exculpatory materials even if their potential exculpatory nature would not otherwise be apparent to the prosecution.

In general, "the duty to disclose such evidence is applicable even though there has been no request by the accused . . . ." (*Strickler v. Greene, supra,* 527 U.S. at p. 280.) The high court has stated that its test for materiality is "sufficiently flexible to cover the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (*United States v. Bagley, supra,* 473 U.S. at p. 682 (plur. opn. of Blackman, J.); see also *id.* at p. 685 (conc. opn. of White, J.).) But the presence or absence of a specific request at trial is relevant to whether evidence is material under this test. "The Government notes that an incomplete response to a specific request not only deprives the defense of certain evidence, but also has the effect of representing to the defense that the evidence does not exist. In reliance on this misleading representation, the defense might abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued. [Citation.] [¶] We agree that the prosecutor's failure to respond fully to a *Brady* request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption." (*Id.* at pp. 682–683 (plur. opn. of

Blackman, J.).) Accordingly, in determining whether evidence was material, "the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case." (*Id.* at p. 683 (plur. opn. of Blackman, J.).)

■ Another reason a request may be significant is that the request can inform the prosecution that certain evidence is potentially exculpatory when the exculpatory nature of the evidence would not otherwise be apparent. Then the prosecution would be on notice both that the defense considered the evidence potentially exculpatory and that the defense did not have it and presumably could not get it by itself. In such a case, the prosecution could cull through the evidence, viewing it in light of the defendant's request as well as its own theory of the case. Thus, if the defense requests at trial specific evidence relevant to mitigation that the prosecution possesses, the prosecution should disclose it whether or not it relates to any of the prosecution evidence. But absent a specific request at trial, the *Brady* duty does not extend to evidence that relates solely to the defendant personally and whose exculpatory nature would therefore not otherwise be apparent to the prosecution. Such evidence is not material in the *Brady* sense.[5]

The information petitioner seeks here involves his own behavior in prison. But the prosecution's case had nothing to do with petitioner's prison behavior. The instant charge was a murder committed after he was released from prison. The prosecution case in aggravation consisted entirely of crimes committed before he was in prison. Prison officials did not investigate or help prosecute any of these crimes. Thus, the prosecution was generally not responsible for information prison officials possessed that might help the defense. (See *People v. Superior Court (Barrett), supra,* 80 Cal.App.4th 1305 [the prosecutor's duty to disclose information favorable to the defense does not extend to information the California Department of Corrections possesses unrelated to the charges].)

In this case, it appears the prosecution did provide the defense with some documents regarding petitioner's behavior in prison although, petitioner claims, not everything. This circumstance suggests, as petitioner argues, that defense counsel may have requested some such records at time of trial. But the defense was not misled into believing that no other information existed.

---

[5] Another example of when the prosecution might have to disclose potentially exculpatory evidence only on request is when, unknown to the prosecution, the defendant intends to present a defense that a certain third person, rather than the defendant, committed the charged crime, and the prosecution possesses information about that person's prior record that might assist this defense. If the prosecution had no reason to suppose the third person had any connection to the case, it cannot be expected to disclose that information on its own. However, if the defendant specifically requests that information as potentially exculpatory, the prosecution might, in that circumstance, have to disclose it.

In his reply to the opposition to the discovery motion, which he adopted by reference in his traverse, petitioner attached a copy of a report that he says the prosecutor disclosed to the defense before trial. The report was by a prosecution investigator stating that he and the prosecutor had reviewed prison records regarding petitioner. The two of them "went through all of these papers and picked out various ones that were felt to be relevant," and arranged for them to be copied and forwarded to the district attorney's office. This document clearly indicated that the investigator did not obtain *all* the records regarding petitioner, but only those the prosecution felt were relevant. Of course, what the prosecution felt was relevant may be very different from what the defense feels is relevant as possible mitigating evidence. By giving the defense documents that it found relevant, the prosecution did not assume, absent a specific request, the obligation to provide all prison records that the *defense* may have found relevant.

■■■ On the instant record, it is not clear whether petitioner specifically requested additional records at time of trial. Whether the defense did make such a request does not matter for purposes of discovery under section 1054.9. If the defense *had* specifically requested the prosecution to provide all of petitioner's prison records in its possession, assuming the records were otherwise material, the prosecution would have been obligated to provide them. The request would have informed the prosecution the records might be exculpatory. Accordingly, this is information to which petitioner would have been entitled at time of trial had he specifically requested it. The current request—to provide documentary and similar evidence regarding "petitioner's leaving the Nuestra Familia"; "information provided by petitioner regarding the Nuestra Familia, its members and associates, and non-member collaborators"; and "assistance provided by petitioner in prosecutions pursued by the State of California and/or local prosecutors against the Nuestra Familia and others accused of collaborating with the Nuestra Familia in the commission of crimes"—is also reasonably specific. This is not just a free-floating request for anything the prosecution has that may be relevant to the case, but a focused request for specific information. Accordingly, this information comes within the scope of section 1054.9.

For these reasons, we believe petitioner is entitled to a discovery order. We have no reason to suppose there will be any difficulty with compliance or enforcement of the order, but if further proceedings are necessary, they should be conducted in the trial court, which can resolve any difficulties much more easily than this court. Accordingly, we will remand the matter to the trial court with directions to issue the discovery order.

### III. Conclusion

We remand the matter to the Shasta County Superior Court with directions to order the respondent to provide to petitioner, within a reasonable time, materials petitioner does not now possess regarding "petitioner's leaving the Nuestra Familia"; "information provided by petitioner regarding the Nuestra Familia, its members and associates, and non-member collaborators"; and "assistance provided by petitioner in prosecutions pursued by the State of California and/or local prosecutors against the Nuestra Familia and others accused of collaborating with the Nuestra Familia in the commission of crimes" that the prosecution or law enforcement agencies involved in the investigation or prosecution of this case possess today, if any exist.

Because it has served its purpose, we also discharge the order to show cause.

George, C. J., Kennard, J., Baxter, J. Brown, J., and Moreno, J., concurred.

**WERDEGAR, J.**—I concur entirely in the majority opinion, with one exception: I find its suggestion that a petitioner having an execution date "may, and usually should" (maj. opn., *ante*, at p. 692, fn. 1), file any discovery motion in this court in the first instance not readily inferable from Penal Code section 1054.9. Notwithstanding its persuasive rationale for directing petitioners generally to file discovery motions in the superior court in the first instance (maj. opn., *ante*, at pp. 691–692), the majority seemingly fails to recognize that the filing of a discovery motion directly in this court would be more expeditious in only those exceptional instances when the motion is patently meritorious or nonmeritorious as a matter of law. At any rate, however sound the suggestion as a matter of judicial convenience, and irrespective of whether the Judicial Council might have the power to adopt suitable rules pertaining thereto, the suggestion—which, in not even purporting to bind petitioners, seems scarcely likely to "expedite" in any reliable way "our consideration of any final challenges to the judgment" (*id.* at p. 692, fn. 1)—is one that more appropriately should be implemented by legislative amendment.