Filed 8/19/21  Harrison v. Superior Court CA4/1

OPINION AFTER TRANSFER FROM THE CALIFORNIA SUPREME
COURT

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID SCOTT HARRISON, | D077854 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. CRN16848) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Harry M. Elias, Judge.
Relief granted.

Barbara A. Smith, under appointment by the Court of Appeal, for
Petitioner.

Summer Stephan, District Attorney, Mark A. Amador, Deputy District Attorney Chief, Linh Lam, Deputy District Attorney Asst. Chief, and Kimberly M. Roth, Deputy District Attorney, for Real Party in Interest.

I.

## INTRODUCTION

Petitioner David Scott Harrison filed a petition for writ of mandate in this court in August 2020 seeking a writ of mandate directing the superior court to grant a motion that he filed pursuant to Penal Code section 1054.9 (section 1054.9) in which he set forth 78 requests for discovery materials in anticipation of filing a habeas corpus petition. Section 1054.9 governs postconviction discovery with respect to habeas corpus proceedings and motions to vacate a judgment where a defendant has been convicted of a serious felony or a violent felony resulting in a sentence of 15 years or more. (§ 1054.9, subd. (a).) The statute requires that, upon a showing of good faith but unsuccessful efforts to obtain discovery materials from trial counsel, a defendant "be provided reasonable access to any of the materials described in subdivision (c)" of section 1054.9. Subdivision (c) defines " 'discovery materials' " as "materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." (§ 1054.9, subds. (a), (c).)

Harrison, who was convicted of murdering his former wife in 1990 and is currently serving a sentence of more than 25 years to life for that conviction, filed the section 1054.9 motion seeking postconviction discovery in May 2020. The trial court denied Harrison's motion in full without addressing the individual requests.

After receiving Harrison's petition for writ of mandate, this court initially summarily denied it in September 2020. Harrison then filed a

2

petition for writ of mandate in the Supreme Court.  On December 16, 2020, the Supreme Court granted Harrison's petition and transferred the matter to this court "with directions to vacate [our] order denying the petition for writ of mandate and to issue an alternative writ directing the San Diego County Superior Court to reconsider petitioner's motion for post-conviction discovery under Penal Code section 1054.9 and to grant any requests contained therein seeking materials to which he is entitled under the statute, or else to show cause before the Court of Appeal why it has not done so."

After the Supreme Court transferred the matter to this court, we vacated our summary denial order of September 2, 2020, and ordered the respondent, the San Diego County Superior Court, to reconsider Harrison's section 1054.9 motion and grant any requests for materials to which he is entitled under the statute, or to show cause before our court as to why it has not done so.  We ordered the San Diego County Superior Court to notify our court within 30 days of the date of our order if it chose to comply with the first alternative.  We did not hear from the Superior Court within 30 days of our order.  We therefore issued an order to show cause (OSC) and specified a briefing schedule for the return and reply.

After receiving a return to the OSC from real party in interest, the People, as well as a reply filed by Harrison's appointed counsel, we now consider whether the trial court should be directed to reconsider Harrison's motion for postconviction discovery under Penal Code section 1054.9 and to grant requests for materials to which Harrison is entitled.

We conclude that a peremptory writ of mandate shall issue, directing the trial court to vacate the order denying petitioner's motion for postconviction discovery under section 1054.9 as to certain of Harrison's 78 requests for materials, which we identify by number in our discussion

3

section. As we explain, certain of the requests lack sufficient specificity, and the trial court need not reconsider those requests. However, pursuant to our peremptory writ of mandate, the trial court is to reconsider the remainder of the discovery requests, and is to order disclosure of those materials, if any, to which Harrison demonstrates he is entitled under section 1054.9.

## II.

## BACKGROUND

Harrison was found guilty of first degree murder for killing his former wife after a bench trial in March of 1990. The trial court also found true the allegation that Harrison personally used a knife in the commission of the crime. The following May, the court sentenced Harrison to a term of 25 years to life, with a consecutive one-year enhancement for his personal use of a knife. According to Harrison's petition, his trial attorney "died not long after Harrison's 1990 conviction."

Harrison directly appealed from the judgment of conviction. He alleged insufficiency of the evidence, ineffective assistance of counsel, and prejudicial pre-indictment delay. This court affirmed the judgment of conviction on June 30, 1992. (*People v. Harrison* (June 30, 1992, D012506) [nonpub. opn.].)

In the intervening years, Harrison has filed six petitions for writ of habeas corpus based on various grounds, including claims that newly discovered evidence established his innocence. Four of the petitions were filed in California state courts and the other two were filed in federal courts. None of the petitions has been found to have merit. Harrison filed his most recent petition for writ of habeas corpus in the United States District Court for the Southern District of California, which denied that petition on April 13, 2020, based on the gatekeeper provision; Harrison had failed to obtain proper

4

authorization from the Court of Appeals to file a successive petition after the 2001 denial of his prior petition on the merits.

Prior to January 1, 2019, section 1054.9's provisions applied only to inmates with sentences of death or life imprisonment without the possibility of parole. (See Stats. 2002, ch. 1105, § 1, enacting Sen. Bill No. 1391 (2001-2002 Reg. Sess.) As of January 1, 2019, section 1054.9 was amended to permit inmates who have been sentenced to 15 years or more for a serious or violent felony to seek postconviction discovery. Harrison filed a motion in the San Diego County Superior Court on May 28, 2020, seeking postconviction discovery pursuant to section 1054.9. Harrison listed 78 requests for materials. His requests cover a broad range of topics and materials relating to various persons involved in the investigation of his ex-wife's murder, persons involved in the trial, and even persons who were not involved in the investigation or trial.[1] The People filed a written opposition to Harrison's

---

[1]     We provide a random sampling of some of the 78 different discovery requests that Harrison set forth in his motion, with formatting in the original, to illustrate the breadth and variety of the requests at issue:

"1.  discovery orders and discovery minute order issued by trial judge David B. Moon ('Moon')[.]"

"5.  personnel files on Larry A. Burns (both state and federal) and investigative officers, and law enforcement persons, that in any way suggest the suppression, tampering, creation, fabrication, concealment or alteration of evidence, or the coercion of persons, suspect, non-suspects, who might have been expected to testify in any legal proceeding[.]"

"6.  Coroner-Medical Examiner autopsy reports[.]"

"10.  that Harrison was prosecuted for the murder as an 'expedient[.]"

"14.  of law enforcement efforts to connect Harrison directly in the suicide of David Johnson[.]"

"20.  of fingerprints collected from the scene of the murder[.]"

motion. The trial court issued an order denying Harrison's motion, in full, on July 6, 2020. The court did not address the individual requests in its order.

On August 27, 2020, Harrison filed his petition for writ of mandate in this court, seeking an order directing the trial court to grant his motion for postconviction discovery. Among other contentions in his petition, Harrison

---

"24. of comparisons conducted between the footprints collected from the scene of the murder to the footprints of Harrison[.]"

"26. Bill of Particulars of how exactly the murder was committed[.]"

"35. that David Johnson could not have committed the murder[.]"

"39. of including, but not limited to, letters, agreements, questions, test results, opinions, graphs, and the entire file and records, of the polygraph test taken by Harrison concerning the murder[.]"

"43. lists and inventories of evidence collected from the crime scene that maybe [s]ubjected to DNA testing[.]"

"44. test results from all DNA testing of evidence collected from the crime scene, the victim and victim's clothing[.]"

"50. of the understanding of every witness that testified for the prosecution at the murder trial of Harrison, that no criminal charges would be brought against the witness in exchange for testimony[.]"

"62. of pre-and post-conviction evidence that is exculpatory to Harrison, materials within the meaning of Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, any favorable evidence, evidence wither favorable or material to guilty or punishment[.]"

"66. of [i]nducements, payments, compensation, considerations, etc. provided to each witness who testified for the prosecution at the murder trial against Harrison[.]"

"68. investigative and interview reports of Dee Dupree[.]"

"74. of false statements made to law enforcement by Gary Jenkins[.]"

"78. that would assist Harrison to present a prima facie case for habeas relief."

asserted that he was unable to contact his trial attorney for assistance in obtaining his file "due to [trial counsel's] passing decades ago."  Harrison stated that he had sought help from the San Diego Innocence Project to try to obtain some discovery before filing his motion pursuant to section 1054.9.[2]  As indicated, this court summarily denied the petition, and Harrison filed a petition for writ of mandate in the Supreme Court.  The Supreme Court granted Harrison's petition and transferred the matter to this court with directions to vacate our order denying Harrison's petition for writ of mandate.  We did so and provided the trial court with the previously-noted options as to how it should proceed:  the court could reconsider Harrison's section 1054.9 motion and grant any requests for materials to which he is entitled under the statute, and notify this court of this choice, or show cause before our court as to why it has not done so.  The trial court did not notify this court that it was choosing the former option.  We therefore issued an OSC as to why Harrison's petition for writ of mandate should not be granted, and we appointed counsel to represent Harrison in this writ proceeding.

The People filed a return to the OSC, and Harrison filed a reply.

### III.

### DISCUSSION

Prior to January 1, 2019, section 1054.9 provided a limited statutory right to postconviction discovery for defendants sentenced to death or to life in prison without the possibility of parole. (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 897 (*Barnett*); Stats. 2002, ch. 1105, § 1, enacting Sen. Bill No. 1391 (2001-2002 Reg. Sess.).)  As noted, as of January 1, 2019, section 1054.9 was amended to permit additional defendants, including those

---

[2]    It is not clear why Harrison believed the California Innocence Project could assist him in obtaining the records from his case.

sentenced to a term of 15 years or more, to seek postconviction discovery.

Section 1054.9 currently provides:

"(a) In a case in which a defendant is or has ever been convicted of a serious felony or a violent felony resulting in a sentence of 15 years or more, upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment, or in preparation to file that writ or motion, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (b) or (d), order that the defendant be provided reasonable access to any of the materials described in subdivision (c).

"(b) Notwithstanding subdivision (a), in a case in which a sentence other than death or life in prison without the possibility of parole is or has ever been imposed, if a court has entered a previous order granting discovery pursuant to this section, a subsequent order granting discovery pursuant to subdivision (a) may be made in the court's discretion. A request for discovery subject to this subdivision shall include a statement by the person requesting discovery as to whether that person has previously been granted an order for discovery pursuant to this section.

"(c) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial.

"(d) In response to a writ or motion satisfying the conditions in subdivision (a), the court may order that the defendant be provided access to physical evidence for the purpose of examination, including, but not limited to, any physical evidence relating to the investigation, arrest, and prosecution of the defendant only upon a showing that there is good cause to believe that access to physical evidence is reasonably necessary to the defendant's effort to obtain relief. The procedures for obtaining access to

8

physical evidence for purposes of postconviction DNA testing are provided in Section 1405, and this section does not provide an alternative means of access to physical evidence for those purposes.

"(e) The actual costs of examination or copying pursuant to this section shall be borne or reimbursed by the defendant.

"(f) This section does not require the retention of any discovery materials not otherwise required by law or court order.

"(g) In criminal matters involving a conviction for a serious or a violent felony resulting in a sentence of 15 years or more, trial counsel shall retain a copy of a former client's files for the term of that client's imprisonment. An electronic copy is sufficient only if every item in the file is digitally copied and preserved.

"(h) As used in this section, a 'serious felony' is a conviction of a felony enumerated in subdivision (c) of Section 1192.7.

"(i) As used in this section, a 'violent felony' is a conviction of a felony enumerated in subdivision (c) of Section 667.5.

"(j) Subdivision (g) only applies prospectively, commencing January 1, 2019."

In interpreting section 1054.9, the Supreme Court has clarified that the statute requires a trial court to order the production of materials that the defendant can demonstrate fall into one of four categories: "[W]e interpret section 1054.9 to require the trial court, on a proper showing of a good faith effort to obtain the materials from trial counsel, to order discovery of specific materials currently in the possession of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the defendant can show either (1) the prosecution did provide at time of trial but have since become lost to the defendant; (2) the prosecution should have

9

provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (*In re Steele* (2004) 32 Cal.4th 682, 697 (*Steele*).)

As *Steele* makes clear, section 1054.9 is not merely a " 'file reconstruction statute.' " (*Steele, supra*, 32 Cal.4th at p. 693.)  However, it provides for "only limited discovery" and "does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses." (*Id.* at p. 695; see *Barnett, supra*, 50 Cal.4th at p. 899.)  The People are under no obligation to "search for or obtain materials not currently possessed." (*Steele,* at p. 695.)

Moreover, "[t]he discovery obligation . . . does not extend to all law enforcement authorities everywhere in the world but . . . only to law enforcement authorities who were involved in the investigation or prosecution of the case." (*Steele, supra*, 32 Cal.4th at p. 696.)  In other words, Penal Code "[s]ection 1054.9, subdivision (b), should not be read as creating a broader postconviction discovery right" than was operative at the time of trial.  (*Steele,* at p. 696.)

A.  *Harrison has stated a prima facie case that he is seeking the discovery as an aid in preparing a petition for habeas corpus*

The People initially contend that Harrison is not entitled to a writ of mandate from this court because he has not sufficiently demonstrated that he

10

is seeking the discovery to assist in preparing a petition for habeas corpus. In his motion in the trial court, Harrison asserted that the discovery materials that he is requesting "are necessary to facilitate the preparation of a post-conviction writ of habeas corpus; to expose constitutional violations including, but not limited to, bias by the trial judge against Harrison and in favor of law enforcement, withholding of material evidence favorable to Harrison or evidence to impeach witnesses for law enforcement, covert questioning of Harrison while he was represented by counsel, of Harrison's innocence, of admissions by law enforcement to any person that Harrison was prosecuted as an 'expedient' and it was 'always believed' Harrison was innocent of the murder, of contacts with personnel of the California Western School of Law, California Innocence Project, including but not limited to, Alissa Bjerkhoel and Daniel DeSaegher in any way related to Harrison or his case, prosecution, conviction and guilt or innocence, that Harrison hired any perpetrator(s) of the murder, or that he in any way conspired with any other person(s) in committing the murder, forensic evidence of Harrison's innocence or the guilt of another, law enforcement's corruption of the defense investigator, rewards, benefits, promises or inducements made to actual or potential witnesses for law enforcement, warnings, coercion or threats made to any actual or potential witnesses for law enforcement or for the defense either to compel testimony or not to testify . . . to name just a few of the constitutional issues to be raised in Harrison' post-conviction writ of habeas corpus."

The People argue that Harrison's assertion "fail[s] to adequately establish facts justifying a seventh habeas petition," and characterize it as "simply a conclusory statement." The People argue that Harrison must "articulate a cogent theory that would entitle [him] to some form of

postconviction relief" in order to be entitled to discovery under section 1054.9, because any petition that he would file at this point would be a successive habeas petition.

There is nothing in section 1054.9 that indicates that when a defendant seeks postconviction discovery in preparation for filing a successive habeas petition, as opposed to an initial habeas petition, the defendant must make a particularized showing, beyond that he seeks the discovery in preparation for a habeas petition. (See *Steele, supra,* 32 Cal.4th at p. 691 [an otherwise eligible defendant "is entitled to seek discovery [under section 1054.9] if he or she is preparing to file the petition," and not simply at the time of filing a petition or after a petition has already been filed].) Nor does the statute suggest that the defendant must demonstrate to the trial court that the anticipated habeas petition will not be rejected on procedural grounds, such as that it is a successive petition that merely repeats prior contentions, or that it is untimely.

The People also contend that Harrison should be prevented from obtaining any of the postconviction discovery that he is seeking because he could have sought that discovery as of January 1, 2019, rather than January 1, 2020, which is the date on which Harrison incorrectly asserts he became eligible to request postconviction discovery. The People imply that because Harrison filed "three of his six habeas petitions after January 1, 2019," he could have made his request for discovery with respect to those previous habeas petitions, and his motion is therefore untimely. In *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 307 (*Catlin*) the Supreme Court rejected the contention that a trial court may deny a section 1054.9 discovery request as untimely. The *Catlin* court noted that "the text of section 1054.9 does not contain a timeliness requirement," and it identified "[a]t least two

possible reasons . . . why the Legislature chose not to allow a trial court to deny as untimely a section 1054.9 postconviction discovery motion." (*Ibid.*) The *Catlin* court explained: "First, a petitioner who files *an untimely habeas corpus petition* may nonetheless be entitled to relief upon a showing 'that a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence.' (*In re Clark* [(1993)] 5 Cal.4th [750,] 797.) Thus, as long as the habeas corpus petitioner satisfies this test, an unreasonable delay in seeking section 1054.9 postconviction discovery will not bar relief. The possibility of such postconviction relief may have persuaded the Legislature that the consequences of an unreasonably delayed postconviction discovery motion should be determined as part of a court's evaluation of the petitioner's habeas corpus petition, and that a postconviction discovery motion (which seeks information that, the defendant hopes, will show that the defendant is entitled to habeas corpus relief) should not be denied as untimely. Second, the Legislature may have seen it as a waste of time and resources to have the motion's timeliness litigated *twice*: once when the discovery motion itself is made, and again when the habeas corpus petition is adjudicated." (*Catlin*, at p. 307.)

Given the fact that section 1054.9 imposes no timeliness requirement, we reject the People's implied suggestion that the trial court need not engage in particularized consideration of Harrison's discovery requests on their merits because Harrison waited too long after becoming eligible to file his motion and/or because he has filed previous habeas petitions after having become eligible, without seeking discovery in connection with those petitions.[3] As the *Catlin* court noted, the trial court may consider the

---

3     Our rejection of the People's timeliness argument may raise a concern about the possibility of a flood of repeated or successive postconviction

timeliness of any new habeas petition that Harrison files when that petition is adjudicated.

We conclude that neither of the People's procedural arguments, i.e., that Harrison has not sufficiently demonstrated that he is seeking the discovery in preparation for the filing of a habeas petition or that his discovery motion under section 1054.9 is untimely, provides a basis for the trial court to decline to consider each of Harrison's requests on their merits and determine whether he has established his entitlement to any of the requested materials.

B. *The trial court may not deny all of Harrison's requests on the ground that some of the requests seek discovery beyond file reconstruction and that Harrison has not made a sufficient showing that there is a reasonable basis to believe the requested materials actually exist*

The People also argue that the trial court need not consider any of Harrison's requests for postconviction discovery because he "failed to show a reasonable basis to believe the requested materials actually existed, as required by *Barnett v. Superior Court, supra*, 50 Cal.4th at p. 899." The People assert that in *Barnett*, "the California Supreme Court held that

---

discovery requests. The *Catlin* court considered the concern expressed by the appellate court majority in that case that "precluding a trial court's denial of a postconviction discovery motion as untimely 'would result in mischief,' because 'a defendant could file numerous section 1054.9 motions over a period of years and the trial court would be without power to deny the motions on the grounds that he or she had waited too long.'" (*Catlin, supra,* 51 Cal.4th at pp. 307–308.) The *Catlin* court indicated that "a fear that petitioners will bombard the courts with *successive* or *repeated* discovery motions . . . is not a reason to deny such motions as *untimely*," but left open the possibility that a trial court could "deny multiple discovery motions as successive." (*Id.* at p. 308.) The postconviction discovery requests at issue in this case are Harrison's first attempt to obtain discovery pursuant to section 1054.9. *Catlin* thus counsels against rejecting his motion as untimely out of fear that it may not be his last.

14

'section 1054.9 requires defendants who seek discovery beyond file reconstruction to show a reasonable basis to believe that other specific materials actually exist.' (*Barnett, supra*, 50 Cal.4th at p. 899.)" According to the People, Harrison "did not request file reconstruction at all" with respect to any of his 78 requests for discovery; as a result, they posit, he was required to show a reasonable basis for his belief that the materials that he requests actually exist, but did not do so.

In *Barnett*, the Supreme Court concluded that "[r]equiring defendants to show they have reason to believe specific materials actually exist does not place an onerous burden on them" because they "have access to the trial record and to the discovery materials the prosecution provided to the defense before trial," or they "may obtain those materials either from trial counsel or through file reconstruction." A defendant "could use these resources 'to make the necessary showing.' " (*Barnett, supra*, 50 Cal.4th at p. 900.) An example of such a showing would be " 'if a witness testifies about a particular report that the petitioner does not possess, the petitioner would have sufficient evidence to justify a request for that report under section 1054.9' " and a petitioner could also " 'seek access to a report he or she does not possess that is cross-referenced in a police report possessed by the petitioner,' " or, " 'if evidence in the record indicates that a particular witness was interviewed three times and the petitioner has reports documenting only two interviews, that petitioner could make the necessary showing, based on the record, that a third report likely exists.' " (*Barnett*, at p. 900.) The *Barnett* court summarized the rule as follows: "[T]o be entitled to receive discovery beyond merely recovering items that the prosecutor had provided to defense counsel before trial, defendants must show they have a reasonable basis to believe that the specific materials they seek actually exist," and that "a reasonable

basis to believe that the prosecution had possessed the materials in the past would also provide a reasonable basis to believe the prosecution still possesses the materials." (*Id*. at p. 901.)

The People do not identify which of Harrison's 78 requests they believe go beyond a request for file reconstruction. Instead, the People appear to suggest that *none* of Harrison's 78 requests seeks to reconstruct defense counsel's file. However, our review of Harrison's requests demonstrates that some of the requests appear, at least on their face, to be requests for materials that would permit Harrison to reconstruct his counsel's trial file, or, if they were not in the trial file, they are materials that Harrison would have a reasonable basis to believe exist. For example, Harrison requests items such as "Coroner-Medical Examiner autopsy reports," and discovery documenting "fingerprints collected from the scene of the murder." These requests appear to seek materials that were likely to have been produced to Harrison's defense attorney as discovery prior to trial. One could therefore reasonably expect that such materials would be found in trial counsel's file, or, if not, they are nevertheless the type of materials that are likely to exist and to be in the possession of the prosecution.[4] To the extent that the People have not demonstrated that *all* of Harrison's requests seek discovery materials that go beyond file reconstruction, and because they have not identified which of the 78 items they believe do not reasonably constitute requests that seek to reconstruct trial counsel's file, we reject this ground as

---

[4]    We do not point out these two requests to suggest that they are the only requests that may seek materials that were in the defense files or for which there appears to be a basis for believing they exist. Rather, we cite these requests to demonstrate that the People's contention that *none* of Harrison's requests can be viewed as file reconstruction requests appears to be inaccurate.

16

a basis for the trial court to deny Harrison's motion in its entirety, without consideration of each individual request. On remand, the People may object to the disclosure of certain materials on the ground that a particular discovery request seeks materials that go beyond file reconstruction, and that with respect to those materials, Harrison has failed "to show [he has] reason to believe [these] specific materials actually exist" (*Barnett, supra*, 50 Cal.4th at p. 900). Such objections must be addressed to the particular discovery request at issue; a blanket objection on this ground is insufficient to support the denial of Harrison's motion under section 1054.9.

C.   *The trial court need not reconsider requests that are overbroad, vague, or that clearly do not pertain to discovery obtainable pursuant to section 1054.9*

Finally, we consider the People's contention that the trial court properly declined to order disclosure of the materials that Harrison has requested because his requests fail to identify the materials that he is seeking with sufficient particularity. Specifically, the People argue that discovery requests 7–9, 12, 16–19, 27–37, 40–41, 45–54, 56–58, 62–66, and 71–78 "lack[ ] specificity and [a]re overbroad," and constitute what is, in effect, a fishing expedition. As the People note, section 1054.9 "does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses." (*Steele, supra*, 32 Cal.4th at p. 695.) Rather, the statute, "provides only for *specific discovery* and not the proverbial 'fishing expedition' for anything that might exist." (*Barnett, supra*, 50 Cal.4th at p. 894, italics added.)

In response, Harrison's appointed counsel appears to concede that the requests that the People identify as being insufficiently specific do indeed lack specificity and cannot reasonably be addressed; rather than disputing the lack of specificity of the identified requests, Harrison's attorney suggests

17

that because the People did not list *all* 78 requests as lacking sufficient specificity, the People tacitly acknowledge that the remainder are sufficiently specific.[5] We have reviewed the discovery requests itemized by the People, and we agree that they are vague and often overbroad; we therefore accept Harrison's implied concession that the enumerated requests are insufficiently specific to require that the People produce materials in response to them. On remand, the trial court need not reconsider requests 7–9, 12, 16–19, 27–37, 40–41, 45–54, 56–58, 62–66, and 71–78. The trial court shall reconsider whether Harrison is entitled to obtain discovery materials pursuant to requests 1–6, 10–11, 13–15, 20–26, 38–39, 42–44, 55, 59–61, and 67–70.[6]

In returning this matter to the trial court for further consideration of this narrowed set of discovery requests, we do not intend to instruct the trial court as to what kind of discovery order to make. Consistent with the Supreme Court's instruction, we merely direct the trial court to *reconsider* Harrison's discovery requests that do not, as a matter of law, lack sufficient specificity.

---

5    In Harrison's Reply to the People's Return, appointed counsel does not dispute the lack of specificity of the items identified by the People, but instead states, "The District Attorney's list indicates even the prosecutor could not deny some requests were sufficiently specific, i.e., Items 1-6, 10-11, 13-15, 20-26, 38-39, 42-44, 55, 59-61, and 67-70, which constitute over a third of the requested items." The items referenced by Harrison's attorney are those items *not* mentioned by the People as lacking sufficient specificity.

6    We do not intend to suggest that the trial court may not find, upon further consideration of these requests, that one or more of the remaining requests are also impermissibly vague or overbroad. We simply require the trial court to make a particularized finding, as to each request, whether Harrison has demonstrated his entitlement to the requested discovery materials under section 1054.9.

18

IV.

DISPOSITION

Let a peremptory writ of mandate issue, directing the Superior Court of San Diego County to vacate the order denying in full Harrison's request for postconviction discovery under section 1054.9. The court is directed to reconsider Harrison's discovery requests 1–6, 10–11, 13–15, 20–26, 38–39, 42–44, 55, 59–61, and 67–70, and to order disclosure of those materials to which Harrison has demonstrated he is entitled pursuant to section 1054.9. To the extent that the trial court orders disclosure and the parties are unable to reach an informal agreement on a reimbursement plan for any copying costs that may be incurred, the trial court is authorized to make an order on that issue, as well.


AARON, Acting P. J.

WE CONCUR:


IRION, J.


DO, J.