Filed 4/9/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>      Respondent;<br><br><br>BRYAN MAURICE JONES,<br><br>      Real Party in Interest. | D074028<br><br>(San Diego County<br>Super. Ct. No. CR136371) |

Petition for writ of mandate and/or prohibition from an order of the Superior Court of San Diego County, Joan P. Weber, Judge. Petition denied.

Summer Stephan, District Attorney, Mark A. Amador and Samantha Begovich, Deputy District Attorneys, for the Petitioner.

No appearance for Respondent.

Habeas Corpus Resource Center, Shelley J. Sandusky, Cliona Plunkett and Rachel Gabrielle Schaefer, for Real Party in Interest.

The San Diego County District Attorney petitions for a writ of mandate and/or prohibition challenging the superior court's order directing the district attorney to turn over to defense habeas counsel the prosecution's jury selection notes, contending the materials are privileged work product not subject to discovery. We are called upon to determine whether these notes, when referenced during a *Batson/Wheeler*[1] hearing by a prosecutor offering a neutral reason for exercising a peremptory strike, are discoverable by the defendant as part of postconviction writ of habeas corpus discovery. We conclude they are, and we deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1994, a jury convicted Bryan Maurice Jones of the first degree murders of JoAnn S. and Sophia G. (Pen. Code,[2] §§ 187, 189), attempted murder of Maria R. and Karen M. (§§ 664, 187), and the forcible rape, sodomy and oral copulation of Karen M. (§§ 261, subd. (a)(2), 286, subd. (c), 288a, subd. (c).) The jury also sustained an allegation that Jones used a deadly weapon in the attempt to murder Maria R. (§ 12022, subd. (b)), along with special circumstance allegations: Jones murdered JoAnn S. and Sophia G. during the commission or attempted commission of the crime of sodomy (§ 190.2, subd. (a)(17)), and he committed multiple murders (§ 190.2, subd. (a)(3)). The jury sentenced Jones to death (§ 190.1 et seq.), and the judgment was affirmed on appeal. (*People v. Jones* (2013) 57 Cal.4th 899.)

---

[1] *Batson v. Kentucky* (1986) 476 U.S. 79; *People v. Wheeler* (1978) 22 Cal.3d 258.

[2] Further statutory references are to the Penal Code unless otherwise indicated.

During jury selection, the prosecution used peremptory challenges to excuse two African-American jurors, and defense counsel objected. (*People v. Jones, supra,* 57 Cal.4th at p. 916.) The court determined the defense attorney made a prima facie showing of racial bias. (*Id.* at p. 917.) The prosecutor offered race-neutral explanations for excusing the jurors, citing in part a numerical score for each prospective juror that the prosecution team had devised. (*Id.* at pp. 917-918.) The trial court found the explanations credible and permitted the strikes.

The defense attorney made a second *Batson/Wheeler* challenge after the prosecutor used a peremptory strike on a third African-American female. The prosecutor again referenced the numerical analysis, which had been conducted by three people in the office. The court offered its opinion of the juror, consistent with the reasoning provided by the prosecutor, and denied the *Batson/Wheeler* motion.

On appeal, Jones challenged the credibility and genuineness of the race-neutral explanations, and the Supreme Court deferred to the trial court's assessment. (*Id.* at p. 919.) Jones also argued a third juror was improperly excused based on race. (*Id.* at pp. 919-920.) The Supreme Court reviewed the record independently regarding the third African-American juror and determined there was ample evidence that no prima facie case of group bias had been made. (*Ibid*.)

Subsequently, in his amended petition for writ of habeas corpus, No. S217284, Jones alleged ineffective assistance of counsel because his trial counsel failed to raise a *Batson/Wheeler* error for the prosecutor's exercise of peremptory challenges against women, noting 13 of the prosecution's 17 peremptory strikes were against prospective

3

female jurors. Jones further alleged his trial counsel was ineffective for failing to raise a *Batson/Wheeler* error on the ground that four of those women were also African-American.

Following Jones's direct appeal, pursuant to section 1054.9, his habeas attorney sought postconviction discovery of the jury selection notes.[3] The trial court granted the request in April 2018. In May, the district attorney filed a writ of mandate and/or prohibition seeking a stay and requesting we vacate the trial court's order, which we denied. The district attorney appealed. The Supreme Court granted the petition for review and transferred the matter to this court. We vacated our order denying the writ of mandate and/or prohibition and issued an order to show cause returnable why petitioner is not entitled to the relief requested. Jones filed a formal return to the order to show cause.

DISCUSSION

A

*Legal Principles*

We review a trial court's ruling on discovery matters under an abuse of discretion standard. (*People v. Ayala* (2000) 23 Cal.4th 225, 299.) An abuse of discretion is shown when the trial court applies the wrong legal standard. (*Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1493.) The burden falls on the

---

[3] Jones also sought any policy memoranda regarding jury selection at the time of trial. The district attorney represented it has no records of any such policy memoranda to turn over.

4

complaining party to establish an abuse of discretion, and we do not substitute our own opinion for the trial court's, absent a showing that there has been a miscarriage of justice. (*Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 366 (*Kennedy*), citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

A defendant is entitled to materials to which he would have been entitled at trial, whether or not he possessed those materials at the time of trial. (*In re Steele* (2004) 32 Cal.4th 682, 693, 695-696 (*Steele*); § 1054.9, subd. (b).) This includes materials the prosecution did not provide at trial because there was no specific defense request but would have been obligated to provide had there been one. (*Steele*, at pp. 696-697.) The defendant bears the burden of demonstrating the materials requested are ones to which he would have been entitled to discovery at the time of trial. (See *Kennedy, supra,* 145 Cal.App.4th at p. 366.) In issuing the order to turn over the jury selection notes, the trial court necessarily concluded Jones met his burden of demonstrating he was entitled to them at the time of trial. Thus, to demonstrate an abuse of discretion in this case, the district attorney must demonstrate that at the time of trial, the defendant was not entitled to the jury selection notes. (Cf. *ibid.*)

B

Batson/Wheeler *Challenges*

Because Jones's request for postconviction discovery rests on potential allegations of a *Batson/Wheeler* violation, consideration of the three-step *Batson* framework is necessary. In the first stage of a *Batson/Wheeler* challenge, the defendant must make out a prima facie case that there is an inference of a discriminatory purpose from the

5

prosecutor's use of peremptory strikes. (*People v. Lenix* (2008) 44 Cal.4th 602, 612-613 (*Lenix*).) The burden then shifts to the prosecution to offer race- or gender-neutral justifications for the strikes in the second stage. (*Ibid.*) At the third stage, the trial court evaluates whether the race- or gender-neutral explanations are credible. (*Snyder v. Louisiana* (2008) 552 U.S. 472, 477 (*Snyder*); *Miller-El v. Cockrell* (2003) 537 U.S. 322, 328-329.) "[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted." (*Snyder,* at p. 478, citing *Miller-El v. Dretke* (2005) 545 U.S. 231, 239.) " 'Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial . . . evidence of intent as may be available.' " (*Foster v. Chatman* (2016) 136 S.Ct. 1737, 1748 (*Foster*), citing *Arlington Heights v. Metropolitan Housing Development Corp.* (1977) 429 U.S. 252, 266.)

C

*Work Product*

There is no constitutional basis for work product privilege; thus, "any protection in California . . . must be based on state common or statutory law." (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 380.) The work product privilege is codified in the Code of Civil Procedure; it protects from discovery "writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories." (Code Civ. Proc., § 2018.030, subd. (a).) In the civil context, other work product is discoverable if the court determines its protection would unfairly prejudice the party seeking discovery. (Code Civ. Proc., § 2018.030, subd. (b).) However, "[t]hrough its reference to the Code

6

of Civil Procedure 2018.030, subdivision (a), Penal Code section 1054.6 ' "expressly limits the definition of 'work product' in criminal cases to 'core' work product, that is, any writing reflecting 'an attorney's impressions, conclusions, opinions, or legal research or theories.' " ' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 355, italics omitted; *Izazaga,* at p. 407.)  This includes materials compiled by investigators and other agents in preparation for trial.  (*People v. Collie* (1981) 30 Cal.3d 43, 59 (*Collie*).)

California's work product protection exists to encourage attorneys to thoroughly prepare their cases for trial and to investigate the favorable and unfavorable aspects of their cases, as well as to prevent attorneys from "taking undue advantage of their adversary's industry and efforts."  (Code Civ. Proc., § 2018.020, subds. (a) & (b).) " '[T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.' "  (*Collie, supra*, 30 Cal.3d at p. 59, quoting *United States v. Nobles* (1975) 422 U.S. 225, 238-239 (*Nobles*).)

We are tasked with determining whether the work product privilege remains absolute when a court has an obligation to evaluate the intent of the prosecution, and the written mental impressions themselves may reveal an effort to unlawfully exclude prospective jurors based on race or gender.  *Foster, supra,* 136 S.Ct. 1737 is instructive on this point.

In *Foster,* the United States Supreme Court considered a *Batson/Wheeler* challenge based on jury selection notes collected by defense counsel through the Georgia Open Records Act.  (*Foster, supra,* 136 S.Ct. at p. 1743.)  This evidence included copies

7

of the venire list with highlights and notes that identified prospective African-American jurors; a draft affidavit that referenced a statement by prosecution investigator that referenced who to select if they "had to pick a black juror"; handwritten notes on three of the African-American prospective jurors, identifying them as "B # 1," "B # 2," and "B # 3"; and a typed list of the qualified jurors remaining after voir dire with the letter "N" next to 10 jurors' names, including all the qualified African-American jurors, to signify whom to strike. (*Id.* at p. 1744.) In offering its race-neutral explanations, the prosecutor referenced the voir dire notes, explaining that they had " 'listed' " one of the African-American jurors as " 'questionable,' " when they had not; the juror's name had been included among the prosecution's list of jurors to exclude. (*Id.* at pp. 1749-1750.) The court noted that "[t]he contents of the prosecution's file . . . plainly belie the State's claim that it exercised its strikes in a 'color-blind' manner." (*Id.* at p. 1755.)

Although *Foster* does not address whether the jury selection notes were protected work product, it makes clear the information contained within those notes is relevant to a determination of a prosecutor's credibility and genuineness. (*Foster, supra,* 136 S.Ct. at pp. 1743, 1755.) Thus, it is an example of the evidence of intent that a court should consider during the third stage of the *Batson/Wheeler* hearing. (*Id.* at p. 1748.)

Here there is no dispute that the prosecution's jury selection notes likely contain the prosecution's impressions, conclusion, or opinions; this is the reason Jones seeks their disclosure. It is less clear whether those notes will reveal impressions, conclusions, or opinions about the legal theory of the case. Jones contends the thoughts and impressions regarding prospective jurors are not germane to trial strategy.

8

We agree there is a difference between a prosecutor's thoughts and opinions about the quality of the legal case or trial strategy and the thoughts and opinions about the adequacy of prospective jurors. The second step of the *Batson/Wheeler* hearing requires the prosecutor to disclose his or her thinking regarding the prospective jurors by offering a race- or gender-neutral justification for exercising the challenged peremptory strikes. (*Lenix, supra,* 44 Cal.4th at pp. 612-613.) Moreover, the purpose of the third step is to evaluate the prosecutor's reasoning. (See *People v. Winbush* (2017) 2 Cal.5th 402, 434 (*Winbush*); *People v. Gutierrez* (2017) 2 Cal. 5th 1150, 1158 (*Gutierrez*) [focus is on subjective genuineness of prosecutor's reasons].) This is inconsistent with the notion that circumstantial evidence of those thoughts is absolutely protected.

The district attorney's reliance on *Hickman v. Taylor* (1947) 329 U.S. 495 (*Hickman*) does not persuade us otherwise. In *Hickman,* a tug boat company and its underwriters hired an attorney to defend against claims from a boating accident. (*Id.* at p. 498.) The attorney documented his interviews of survivors and refused to turn over the notes when ordered to do so. (*Id.* at pp. 499-500.) The United States Supreme Court, relying on federal work product doctrine, explained: "[W]ritten statements, private memoranda and personal recollections prepared for or formed by an adverse party's counsel in the course of his legal duties. . . . fall[ ] outside the arena of discovery and contravene[ ] the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." (*Id.* at p. 510.) Thus, "the general policy against invading the privacy of an attorney's course of preparation"

9

requires the party seeking to invade it "to establish adequate reasons to justify production . . . ." (*Id.* at p. 512.)

The California Supreme Court has similarly held in the civil context that a witness statement is protected from disclosure as long as the attorney's impressions, conclusions, opinions, or legal research are inextricably intertwined with the witness statements, either because there are explicit comments stating those impressions or because the line of inquiry reveals the theory of the case.[4] (*Coito v. Superior Court* (2012) 54 Cal.4th 480, 495 (*Coito*).)

However, neither *Hickman, supra,* 329 U.S. 495 nor *Coito, supra,* 54 Cal.4th 480 addresses the situation before us, which does not pertain to witness statements and instead focuses on the conflict between protecting an attorney's mental impressions and ensuring the attorney's jury selection decisions are not based on discriminatory intent. Here, constitutional concerns are at odds with the alleged statutory protections of an attorney's work product; "[t]he 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.' " (*Foster, supra,* 136 S.Ct. at p. 1747, quoting *Snyder, supra,* 552 U.S. at p. 478.) "The jury is to be 'a criminal defendant's fundamental "protection of life and liberty against race or color prejudice." ' [Citations.] Permitting racial prejudice in the jury system damages 'both the fact and the perception' of the jury's role as 'a vital check against the wrongful exercise of power by the State.' " (*Pena-*

---

4    In *Coito*, the Supreme Court directs trial courts, "[u]pon an adequate showing," to "determine, by making an in camera inspection if necessary, whether absolute work product protection applies to some or all of the material." (*Coito, supra,* 54 Cal.4th at p. 496.)

*Rodriguez v. Colorado* (2017) 137 S.Ct. 855, 868.) Given the unique context of the situation and the importance of avoiding discrimination in jury selection, we cannot conclude the trial court abused its discretion.

D

*Waiver of Work Product Protection*

Jones contends he was entitled to the notes at the time of trial because the prosecutor waived the claim of privilege by referencing details from his jury selection notes during the *Batson/Wheeler* hearing. The district attorney argues there was no waiver of privilege because the prosecutor was not a witness when referencing the jury selection notes. We agree with Jones. Even assuming the jury selection notes are undiscoverable core work product, the prosecution's reference to their contents waived the protection.

The only recognized exception to the absolute protection of core work product is the waiver doctrine. (*Wellpoint Health Networks v. Superior Court* (1997) 59 Cal.App.4th 110, 120.) The core work product privilege is waived when a witness testifies as to the work product's content. (See *Nobles, supra,* 422 U.S. at p. 239 [investigator who testified waived privilege as to any matters about which he testified].) Additionally, Evidence Code section 771 requires the production of a writing used to refresh a witness's memory while testifying if requested by the adverse party. (Evid. Code, § 771, subd. (a).) The adverse party may cross-examine the witness concerning the writing and introduce portions of it that are pertinent to the testimony. (Evid. Code, § 771, subd. (b).)

11

The district attorney encourages us to adopt the definition of "witness" from the Code of Civil Procedure in conducting our analysis. The Code of Civil Procedure defines a "witness" as "a person whose declaration under oath is received as evidence for any purpose, whether such declaration be made on oral examination, or by deposition or affidavit." (Code Civ. Proc., § 1878.) However, the issue before us is a discovery matter that regards criminal law. Other, arguably more relevant code sections also offer definitions for "witness."

The Penal Code defines "witness" as a natural person who has knowledge of the existence or nonexistence of facts related to the crime, has submitted a declaration under oath, has reported a crime, has been served with a subpoena, or who others would perceive to fit one of the aforementioned categories. (§ 136, subd. (2).) The Evidence Code, which is "to be liberally construed with a view to effecting its objects and promoting justice" (Evid. Code, § 2), does not independently define "witness." However, in the definition of the term " 'unavailable as a witness,' " it treats the word "witness" as synonymous with "declarant." (Evid. Code, § 240.) It defines a "declarant" as a "person who makes a statement." (Evid. Code, § 135.) These definitions are broader than the one offered by the district attorney and suggest more flexibility in who constitutes a witness in a criminal matter.

In a *Batson/Wheeler* hearing, resolution of the issues depends entirely on the reasons the prosecutor provides for exercising a peremptory challenge. Moreover, the prosecutor is the only source of information regarding his motivations, other than the jury selection notes. Thus, in this context, the prosecutor effectively serves as a witness as the

12

term is used in Evidence Code section 771. (See also § 136, subd. (2) [witness includes natural persons others would perceive to be a witness]; Evid. Code, §§ 135, 140 [witness is a person who makes a statement].) Moreover, when the prosecutor references jury selection notes to refresh his recollection and offers details from those notes, he waives any work product protection. (See Evid. Code, § 771.)

Here, the prosecutor referenced details from the jury selection notes throughout the *Batson/Wheeler* hearing. He explained the prosecution had numerically evaluated jurors based on their questionnaires, and he shared the specific numeric ratings with the court, in addition to other details and observations regarding the challenged prospective jurors. These references to the jury selection notes waived any work product privilege.

Additionally, while we generally defer to the trial court's factual findings regarding the credibility of a prosecutor's stated rationale (*Winbush, supra,* 2 Cal.5th at p. 434; see *Gutierrez, supra,* 2 Cal.5th at p. 1159), here the court made no finding regarding the gender and gender-and-race-based claims the defense is considering as part of the habeas petition. Thus, justice is best served by allowing Jones to view the jury selection notes.

Finally, we are not persuaded by the district attorney's argument that the prosecutor could not have waived the work product privilege because he was not under oath and therefore was not a witness. Although the prosecutor was not under oath, "[a]n attorney is an officer of the court, and in presenting matters to the court may employ only such means as are consistent with the truth[ ] and may not mislead the court in any fashion." (*Bellm v. Ballia* (1984) 150 Cal.App.3d 1036, 1039; *Jones v. Superior Court*

13

(1994) 26 Cal.App.4th 92, 98-99; Bus. & Prof. Code, § 6068, subd. (d); Rules of Prof.

Conduct, Rule 5-200.[5]) This obligation requires an attorney to render a candid

disclosure. In a *Batson/Wheeler* hearing, the prosecutor—whose credibility and

genuineness will be assessed by the trial court—is expected to testify honestly regarding

his rationale for exercising a peremptory challenge.

Thus, we conclude that when a prosecutor relies on jury selection notes to refresh

his recollection and shares the details of jury selection notes with the court during a

*Batson/Wheeler* hearing, upon request, the defense is entitled to review those notes.

Accordingly, the court did not abuse its discretion in determining Jones was entitled to

the jury selection notes pursuant to section 1054.9. (See *Steele, supra,* 32 Cal.4th

at pp. 693, 695-696.)

---

[5] Rule 5-200 of the Rules of Professional Conduct provides in relevant part: "In presenting a matter to a tribunal, a member: [¶] (A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth; [¶] (B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law."

Business and Professions Code section 6068 provides in relevant part: "It is the duty of an attorney to do all of the following: [¶] . . . [¶] (b) To maintain the respect due to the courts of justice and judicial officers. [¶] . . . [¶] (d) To employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or judicial officer by an artifice or false statement of fact or law."

DISPOSITION

The petition for writ of mandate and/or prohibition is denied.


                                                        HUFFMAN, Acting P. J.

WE CONCUR:



NARES, J.



AARON, J.


15